I call our second and last case of what is a short day today, Rigby v. Philip Morris. We've got the Plaintiff's Coalition going here. Oh, do you? Good morning, Your Honors. I'm Brent Savage. I'm a lawyer in Savannah, and I represent Julian Rigby in this case. When I graduated from law school, it was a long time ago now, 40 years, 12% of the cases filed in federal courts went to jury trials. Now that figure I see in publications, American Trial Lawyers, is 1 in 360. We have lost our way on what Jefferson said when he wrote the Constitution that all cases ought to go for jury trials. In this case, if you look at Judge Lisa Codby Wood's hearing that she had on it, she made a lot of good points, but when she ruled, we're out of court on every point in this case. The facts in this case are very important. We're dealing with the state of Georgia and the state of Tennessee, and we're dealing with Julian Rigby as a farmer, and we're dealing with him as a receiving station. He has been in the tobacco business a long time. A receiving station is a big warehouse that sits in Alma, Georgia, and he gets the tobacco in there, and it is graded by Philip Morris. The allegations in this case are that Julian Rigby spent about the last dimes he had getting ready to plant tobacco in 2009, assured by Philip Morris that they were going to stay in the Georgia tobacco market. They come in on him later and say, well, this is a guy by the name of Craig Stariah, who is their leaf procurement guy, we are going to cut back here, but you can make federal crop insurance claims, and you get paid anyhow on this situation. What happened to Julian, and I'll stick with Georgia in this point, is they have their graders. Philip Morris brings in graders that grade the tobacco. We have affidavits in this case, which Judge Lisa Gabby Wood disallowed, but I've done a lousy job in not pointing out to the court that the same facts are in Julian Rigby's deposition. What they would do is Philip Morris would grade the tobacco, and it's one through five. Five is good tobacco. The first question, though, is she did disallow the affidavits. I gather you don't concede that without the affidavits, you can't survive. Oh, no. No, no. And I've done a lousy job of pointing that out. I kind of go from case to case. I mean, I'm kind of a small-town Savannah lawyer, maybe not a big town. I mean, I'm trying cases, and I pick up briefs, and I don't do a good job on Mr. Rigby's behalf. But no, I don't concede that at all. He testifies about Roger Eggleston, who was one of the second-in-command of Philip Morris, saying here's what we did with the tobacco. We would grade it so we didn't have to pay as much. Four would be a lousy grade. That would be like a D. You're referring to one of the affidavits that was disallowed? No, no, no. I'm referring to Julian Rigby's testimony that's attached to my response. I mean, this is so... Didn't Judge Woods consider that, though? Didn't she consider the deposition testimony? She just didn't think much of it? Sure, she did. Well, really, the question, it seems to me, is whether she abused her discretion in excluding the affidavits. And you've already answered Judge Karn's question. If she didn't, you're pretty much out of luck here, right? You can't prevail. No, no. I couldn't have said it more strongly. Maybe I, you know... This is tough to come to the 11th Circuit, and, you know, the good lawyers have their appellate sections. I don't. I'm trying a case in Waycross, Georgia, on Tuesday, so I kind of come and go. No, what I said... You do agree that it's an abuse of discretion? Standard. Right. Absolutely. I'm not the kind of guy that says to these lawyers, for Philip Morris, you're putting in affidavits from guys that you didn't listen to your 28A discretion. Mr. Green, in this case. You filed tons of evidence after the time, I'm just not going to be that kind of lawyer. Yeah, but you're not answering my question. How can you prevail if we conclude that she did not err in excluding the affidavits? Easily. I didn't explain myself well. All right. Julian Rigby's testimony, which was taken by Philip Morris' counsel, talks about a guy named Roger Eggleston, who was number two in command with Philip Morris. And he says, Eggleston tells him, look, we're great and low, and what happens with this tobacco is they buy it. The farmers are not going to... In other words, it's based on the hearsay testimony of Mr. Rigby. Yeah, but it wasn't moved to be stricken. Nobody moved to knock it out. So I think it's in. Is there anything else? Just a technical question about the record. Is there anything else in the record besides Mr. Rigby's deposition that you think merits surviving summary judgment? Yes, I think... Setting aside the affidavits. Oh, setting aside all the affidavits that I put in? Yeah. Well, certainly Roger Davies was listed in 26A, so there's kind of a hybrid of people that I listed one person to 26A. She knocked that affidavit. Yeah. Well, we're going to get to that. Right. But other than the affidavits... No, I think that Rigby's deposition doesn't. And I didn't respond appropriately to Judge Anton, I'm sorry. What Julian Rigby says is, the number two in command, this is an admission against interest, I think, from Philip Morris says, we're grading low. The farmers don't move this tobacco. It's very expensive to do it. They got to bring it in big trucks, this is big volume. These are millions of pounds of tobacco. So they take what they get. They don't have to. Technically, they can say to Philip Morris, forget it, we're not going to do it. But you have an admission from the number two guy in leaf to procurement, Roger Eggleston, that's in Rigby's deposition, who says we're grading low, and then when we resell it, we grade it up. In fact, the affidavits I submitted are guys talking about in the warehouse, they're grading it at a four, they're taking it to the back of the warehouse, regrading it for a two, which is a B, and they're shipping it to North Carolina. Well, Eggleston says the same thing to Rigby. That's an admission against interest by Philip Morris. I don't understand how I got tossed out. I get tossed out a lot. I mean, in some senses, it's, I mean, it's just, it's sad. I mean, I try to talk plainly. I think federal court is where good cases go to die in our section. You know, where you get a situation, I'm not meaning to be funny, the best medical care I ever got was about three years ago. I was trying a case in front of John Nangle, who was a district court judge. I split my tooth because he ruled some way that I didn't like, had a pen in my mouth. The marshals were running up to me, saying, Mr. Savage, can we help you? I said, I'll be all right. I said, why are you so concerned? He said, because we haven't tried a civil case in three years. We don't want you to go out. I mean, it's sad. I mean, are we servants of the society we sit in, or are we not in this case? And there are many fact issues. As I understand it, your client's explanation for not having previously disclosed the names of the affiants, with the exception of Mr. Davis, was that you didn't know about them? Right. You ought to try to represent a former. I mean, you can't get them, things like that. The affidavits mainly that she's concerned about are on the Tennessee cases, where after they kick him out of Georgia, they give him the Midway station up in Tennessee, and he lasts two years up there. In that case, these are middlemen. They're trying to get rid of middlemen, but they're not doing it like nice guys. What did you do to try to prove your fraud claim, to prepare for that claim, before Philip Morris filed its motion for summary judgment? I had Julian Rigby, and I used to beg him all the time. Can you find these guys? He had a fire in his warehouse. I mean, the best I know how to do. And I found them in the end, and I mean, I'm used to state court systems, and that doesn't mean that the federal courts are wrong, but I mean, I had to find these guys in Tennessee and dig them out. I mean, I find it really interesting that Philip Morris, who throws an affidavit from a guy named Green, that they feel is necessary, that they don't listen to 26A, but I'm not going to do that to them. It ought to be about fairness, and about justice in these cases. I'm amazed that Judge Wood threw me out on this stuff. I was used to her predecessor, Anthony Elimo, but I'll get used to Judge Wood. I mean, she's a fine person, but to throw these affidavits out, how does that deal with justice, where guys are saying, you know, I sold ... This is Tennessee affidavits mainly. I brought my tobacco to Midway Station, where Julian Rigby owned the station, and I put it up for sale, and Philip Morris said, forget it. We're not going to offer anything, and I took it 15 miles down the road to the Burley receiving station, and the same guys bought it, the same stuff, and I'm out of court. I mean, I just don't know what we're doing. I really don't, but Julian Rigby's deposition keeps us in this case. You cannot do things like low grade so that you buy it cheap, and then you get your graders at the back. This is a very dirty business if you ever get into it. I mean, the grading and the stuff, I won't digress into that. At the back of his own warehouse, they're regrading it, because they bought it cheap, because they got the farmers, and they're going to sell it for a much better grade. Rigby talks about that when he talks about Roger Eggleston, and that, I think, Judge Karnes is an admission against interest, and nobody moved to knock me out on that on hearsay or shouldn't be considered. Mr. Eggleston wasn't listed as a potential person who had information about the case. You didn't list him as ... I forget. I've got to be honest with you. I don't remember if you list him or not, because Philip Morris wouldn't have known to explore him because they couldn't anticipate what Mr. Rigby was going to say. I didn't have pneumonia last week, but I took so much cold medicine the last two days, I'm a little foggy, but I'm sorry. I try to answer honestly on this stuff. But you can't keep throwing these cases out, I don't think. We have people saying, they misgraded my tobacco, they regraded in my own warehouse, they made money off of these things. My tobacco is sent up to Tennessee. They won't buy it, and they buy it 15 miles down the road like that. This is fraud. It's fraud. I think I ought to be in court. I really do. I couldn't find the guy. We have something in common, after Judge Pryor, I think. I went to UVA, and somebody went to William & Mary, so we both have Thomas Jefferson there. I try to look at stuff that he wrote. He wrote a lot of stuff that I suppose that we were still operating on, and he wrote a letter to this guy, Alexander Donald, who I don't even know, he was just a friend of his, but he said, by Declaration of Rights, I mean to stipulate freedom of religion, freedom of press, and trial by juries in all cases. I mean, we have a very, even if you talk about a Brandeis-type brief, the philosophy of law, we have a very antagonistic society. Maybe civil jury trials can get back in there and show people they got rights to resolve their problems, but we need to put cases back where I think they were supposed to be. Thank you. I'm going to waive my last two minutes, but thank you for your time, and I appreciate it, and Mr. Rigby greatly appreciates it. May it please the Court, I'm Greg Holland from Smith-Moore Leatherwood, and I'm here for the defendant, Appelese, Phillip Morris USA and Outreach and Client Services. My partner, Kent Coppedge, is here as well. There are two issues before the Court this morning on appeal. First is, did Chief Judge Wood abuse her discretion in excluding affidavits from five witnesses that were undisputably disclosed late and improperly, long after the close of discovery and even a month after the summary judgment motion was filed? And second, did the District Court err, granting summary judgment in this case where the plaintiffs came forward with no evidence to support their allegations? And I would submit that the District Court should be affirmed in its entirety as the District's notes, at summary judgment stage, a plaintiff can't stand on its pleadings and mere conclusions and unsupported allegations. Instead, the plaintiffs were required to come forward with competent evidence to show there were disputed issues of material fact. But that's precisely what they failed to do here. Mr. Savage says they did with the deposition of Mr. Rigby, as I understand his argument. Well, first let me just say that I can't assure the Court this, but I'm almost certain that not once in the Rigby deposition did he mention Roger Eggleston. That's not in the record. But more importantly, in support of the summary judgment motion, the defendant submitted a The plaintiffs admitted virtually every one of those paragraphs. The few that they didn't admit were deemed admitted by Judge Wood because the plaintiffs had failed to effectively controvert those facts as established in the record. And what the record shows is there were valid written contracts in place under which the plaintiffs were paid millions of dollars and under which the plaintiffs testified they were paid in full. Summary judgment was proper. I looked at that statement of undisputed facts and I didn't see where the plaintiffs admitted that there was no fraud, essentially. In other words, they didn't contradict their own allegations in that regard, did they? Well, the facts do contradict their allegations. The only allegation is Mr. Rigby has a couple of lines in his deposition where he says they didn't grade the tobacco properly. But if you look at the plaintiff, well, now let me step back. We're here initially as a breach of contract. Neither of the plaintiffs are parties to a grower contract. So there could be no breach. I understand that. I'm talking about the fraud claim. But on the fraud claim, the contracts that are in the record are instructive because an affiliated entity, Julian Rigby Incorporated, for which Plaintiff Rigby is president and signed three different grower contracts over the time period in dispute. The first was a 2009 grower contract in Georgia. Grower contracts are important to Philip Morse and to farmers because they're signed long before the growing season. And in each contract, the only way Philip Morse will buy it is you must have a written contract and that contract tells the farmer in January, here's the prices Philip Morse is going to pay per stock position and quality. I'm talking specifically about the allegation that Philip Morse or their agents intentionally misgraded the tobacco. Well, I apologize, Your Honor. I'm trying to get to that. So the contracts also specify for each and every grower a maximum pound of tobacco that will be bought from Philip Morse from that farmer. So using the 2009 Julian Rigby Incorporated contract as an example, the contract was for 199,000 pounds of tobacco. Mr. Rigby testified as president of Julian Rigby Inc. that 99 point something percent of that tobacco was delivered that year. He was paid approximately $300,000. And when he did not like the grade assigned to the tobacco, Julian Rigby Incorporated took 71 bales that year elsewhere and sold it for a different price. How can that be fraud? The same happened in 2009 and 2010 in Burley contracts for Julian Rigby Inc., which are not even alleged to be violated in the complaint. But they're instructive because in both of those instances, Julian Rigby Inc. delivered 100 percent. In 2010, they actually delivered more. They amended the contract to go above and beyond the contracted amount. And Mr. Rigby, as president, testified they were paid in full under those contracts. How can he then say that the grading system was fraudulent when he was operating under the very system and selling the full amount of his contracts? There's simply no evidence of fraud. None at all. And besides, in Georgia, you cannot have a fraud claim based on alleged misrepresentations. And I will back up a second. I mean, this fraud claim is very interesting. It's the most amorphous of the claims because it was not pled. The complaint alleges none of the elements of fraud. So I don't really even know what the alleged misrepresentations were. There's certainly no particularity, as Rule 9 would require. And under Georgia law, when you have a valid written contract with a merger clause, as is admitted and undisputed in the facts, in the records, you cannot have a fraud claim if the misrepresentations are contradicted by the express contracted terms. The plaintiffs admit that there are no assurances of any grade to be assigned to tobacco in the contracts. The plaintiffs admit that there is no guarantee that a particular quantity of tobacco will be received and purchased. Instead, the record makes clear the contract says they're only paid for tobacco actually delivered and purchased. And it doesn't matter what the grade was in terms of the receiving station. They're paid per pound delivered, period, regardless of grade. And just as an aside, I mean, I have to say this fraud case just makes no sense to me because you heard argument today. They're saying that on the one hand, the defendants intentionally downgraded tobacco to save money. And then on the other, drove 15 miles up the road to a competitor's business and bought the same tobacco at a higher price. I mean, that's just, that makes no sense. And it's not a fraud claim, I would say. I want to turn your attention to the discovery issue. Judge Wood, in her order, addressed three factors that pertain to whether or not the affidavit should be excluded. The importance of the testimony, the reason given for the failure to disclose, and third is prejudice. As to the first element, and do you agree that those are the proper things for her to consider? The proper factors? Yes, Your Honor. Okay. The district court acknowledged that this testimony was very important to the plaintiff's case. It was what was going to enable it to survive summary judgment, theoretically. But it seems to me that she misapplied that test when she said, because it's important, that argues in favor of exclusion. It's the other way around, isn't it? That the more important the testimony, the more hesitant the court should be to exclude it. I would submit that that's not the case, Your Honor, because the rules of discovery, Rules 26 and Rule 37, are designed to protect the party on the other side. It was their duty to disclose these witnesses to us, so we would have an opportunity to explore the allegations. This litigation went on for nearly four years. Do you have any authority that supports your position in that regard, that the importance of the testimony argues in favor of exclusion? I think the Eleventh Circuit cases, well, let me start by saying, first, of course, it's an abuse of discretion standard, which the Eleventh Circuit says the district court abuses discretion only if there's a misapplication of law or they base their findings on clearly erroneous findings of fact. Well, that's what I'm getting to. That's what I'm getting to. Was there a misapplication of law with regard to that first factor? No, no, Your Honor, there was not. And what authority supports your position on that? The Eleventh Circuit, in multiple cases, has rejected very similar situations. In Falk v. Volunteer Corporation of America, five employees submitted declarations after summary judgment was filed, just like we have here, and the Eleventh Circuit said that the fact that those cases were going to help the plaintiff survive summary judgment are not a good enough reason. They are important because it's the crux of their case, but that's not enough. The Falk case actually takes me to another question that I have. The district court found that Mr. Rigsby's reason for not disclosing the witnesses was that the defendant already knew their identity. But in fact, the reason was, I think, as I read the record, that they didn't know their identity and that's what Mr. Savage just said. So didn't the district court also err in that regard? He did give a reason. No, Your Honor, there was no error because, one, as I stated, there are hundreds and hundreds and hundreds of growers that the defendants buy tobacco from across the Southeast. Mr. Rigsby was aware of hundreds of those growers himself because they actually deliver tobacco in his two company receiving stations. So the identity of those farmers is known to all the parties. But no one had any idea that they're going to make allegations such as they did in these affidavits and that's because the business records of the parties show that the affidavits are incompetent on their face. I mean, for example, there's an affidavit from a never disclosed witness named Mr. Mixon that alleges in 2008 his tobacco was so severely downgraded by Philip Morris, he took it elsewhere. Well, the business records of the parties show that in 2008, Mr. Mixon had a 200,000 pound contract, excuse me, and actually delivered 311,000 pounds, 150% of his volume. And out of those, he delivered 468 bales. He rejected the grades on nine. But that's an argument about why the affidavits would, even with the affidavits, they wouldn't survive summary judgment. I'm still talking about the discovery issue. In the fault case that you mentioned and many other cases, the courts specifically say the non-disclosing party didn't give a reason for the non-disclosure. And the only question I'm asking is, isn't it true that the district court erred when she said that he didn't give a reason or that his reason was the defendant already knew? The reason was I didn't know about the witnesses. Well, I would submit that the district court considered the record before her and exercised her discretion as allowed. But in answer to your question, no, because if you consider this case has morphed over time. There are documents submitted in discovery where the plaintiffs initially thought they were going to file a price-fixing class action. And all these farmers were going to come out of the woodwork. That never materialized. And in fact, Judge Wood dismissed the price-fixing case claims at the very early stages of the litigation. It then morphed into a breach of contract case. But when the plaintiff on the record admitted that all the contracts had been satisfied and paid in full and that none of the plaintiffs were owed anything further under those contracts, it then started morphing into a promissory estoppel and maybe a fraud case. But those claims are not supported by the law in the face of valid written contracts. And the Falk case, the Pivack case, the Nance v. Rico case, those are all cases where affidavits were submitted after summary judgment and the 11th Circuit said that's not a reason even if you didn't know. And I would also submit there are statements in the depositions, I don't know that this is officially in the record and it may even be comments from counsel, but there were statements in depositions of we have all these farmers long before discovery closed that are going to come forward and say this stuff. And they never did. They were never disclosed. And so we had no way to know that they were going to make these kinds of allegations. And I would submit she did not err. Rule 26 is not aspirational and Rule 37 automatically provides an exclusion unless you can show substantial justification or harmlessness. So your argument is essentially even though she made those two mistakes, she still didn't abuse her discretion because, at least in part, because the prejudice here was so substantial. Yes, Your Honor. In my argument, she exercised her discretion as she went through each of those three factors and said that each weighs in favor of exclusion. But absolutely, she did not abuse her discretion here and summary judgment was proper on all accounts. The plaintiff's deposition, the plaintiff's response to requests for admissions and the other discovery made clear there is no basis for any of these claims as a matter of law. And we would submit that the district court should be affirmed in its entirety. Thank you very much. Thank you. And Mr. Savage, you do have some rebuttal time, I believe. Yeah, I spoke too soon. Two minutes. I'll keep it to that. If Roger Eggleston isn't mentioned in the record in this case in Julian Rigby's deposition, you ought to fine me because I've represented directly to you that it is. They've represented to you that it's never mentioned in there. And those are serious things. I think he said he wasn't 100% sure, but he didn't think it was. But you're 100% sure. I like Mr. Holland. I'm not here to hammer him. But you're 100% sure it was mentioned. That's what I got. I got the lines, but I can't bring my phone in. But yeah, I am. Yes, ma'am. We have lots of good used car dealer cases. They want to say, you know, if we have a contract like Fairleigh-Cisco, if Judge Lima had lived and Fairleigh-Cisco had lived, he would have sent him to prison for the third time in his case. You can't have cases, we're saying these contracts that they're entering into where they say you're going to grade things fairly and we're going to support the farmers of South Georgia in these cases. They never meant to do those things. We were moving to set aside these contracts. We were disregarding these contracts. We couldn't give back the benefits that we got in these cases. But you can't write a contract that knocks you out of a fraud claim. Even Judge Wood was saying, you got to look at the contract claims and then the fraud claims in these cases. And they can't knock out my fraud claims with this idea that you can never have with a merger clause a fraud claim where there's fraud in the inducement in a contract. And the two leading cases in Georgia are, go figure, used car dealers who come in and sell cars like Fairleigh-Cisco did with rec history. You can't do that to people. The one important thing is the five affidavits, they dealt with all these guys. They bought tobacco from them. These aren't some aliens. They didn't know out of hundreds of farmers who might think there was fraud or there was a problem. They weren't expected. It was your job to tell them who your witnesses were. They weren't expected to go out and interview everybody they ever dealt with to see maybe they knew something about the case. Right. So, they engaged in the fraud with the farmers or the farmers were the victim of it. They know all about it. To throw up their hands and claim, you know, we can't figure this out. These are the guys they were doing it to, regrading their tobacco in the back. I don't know. I don't get that. Where they say, well, we wouldn't know it. Well, they're the guys they did it to. They knew what they were doing. This is a tough business and they're good at it. All right. I think we have your time. Thank you for your time. We'll be in recess. All rise.